*Enoch Silver, III v. Greater Baltimore Medical Center, Inc., et al.*, No. 3491, September Term 2018. Opinion by Kehoe, J.

**Civil Procedure — Class Actions — Standard of Review:** Maryland appellate courts exercise *de novo review* to determine whether the circuit court applied the correct legal standard in granting or denying class certification. Appellate courts review the circuit court's ultimate decision to grant or deny class certification for abuse of discretion.

**Civil Procedure — Class Actions — Appellate Relief:** If the appellate court decides that the circuit court's decision to deny class certification was based upon a legal error but that there are other grounds in the record that might support denial of class certification, the proper appellate remedy is to vacate the circuit court's judgment and remand the case for the circuit court to consider the alternative grounds. It is not appropriate for appellate judges to exercise the discretion that is reserved to the circuit court.

**Civil Procedure — Class Actions — Certification — Md. Rule 2-231(b) and (c):** Md. Rule 2-231(b) sets out four threshold requirements for class certification: numerosity, commonality, typicality, and adequacy of representation. While these prerequisites are necessary, they are not alone sufficient. In addition to Rule 2-231(b)'s threshold requirements, Rule 2-231(c) sets out additional criteria and a proposed class must usually satisfy at least one of them. The criteria include: (i) whether issues common to the members of the class *predominate* over issues affecting individual members and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy or (ii) the defendant has acted or refused to act on grounds generally applicable to the class so that injunctive or declaratory relief would be appropriate to the class as a whole.

**Civil Procedure — Class Actions — Certification — "Predominance":** In deciding whether potential class issues predominate over individual issues, a court must first classify issues as common to members of the class or confined to one or more individual members of the proposed class. In this exercise, courts should not focus on legal and factual issues in the abstract but rather on how these questions would be answered at trial. To predominate, a class issue need not pertain to all aspects of the action but rather to significant aspects of individual cases.

**Civil Procedure — Class Actions — Certification —"Superiority":** In deciding whether a proposed class action would be superior to other means of dispute resolution, the circuit court should consider "the interest of members of the class in individually controlling the prosecution of separate actions," "the extent and nature of any pending

litigation," "the desirability . . . of concentrating the litigation of the claims in the particular forum," and "the difficulties likely to be encountered in the management of a class action." Md. Rule 2-231(c). Answering these questions requires the court to weigh the relative advantages and disadvantages of a class action as opposed to other procedures.

**Civil Procedure — Class Actions — Subclasses:** A circuit court is under no obligation to *sua sponte* propose subclasses when the court declines to certify the class as proposed by the plaintiff

**Civil Procedure — Class Actions:** The plaintiff in this action proposed a single class to adjudicate all claims for damages based on the assertion that four large Maryland hospitals had violated Md. Code Health Gen. § 4-304 by overcharging patients and former patients for copies of medical records over a four-year period. The circuit court did not abuse its discretion in concluding that the plaintiff had not demonstrated that class issues would predominate over individual issues or that a class action would be an efficient and economical method of adjudicating the claims of class members.

The plaintiff also proposed a separate class for injunctive relief against the hospitals. The court concluded that, because the damages class had not been certified, it was inappropriate to certify a hybrid class action, that is one in which a class could be certified under more than one section of Md. Rule 2-231(c). Therefore, the court declined to certify the injunctive relief class. But the plaintiff had never requested hybrid class certification, and the court did not consider his request for certification of an injunctive relief class under Md. Rule 2-231(c)(2) alone. In so doing, the court erred.

Circuit Court for Baltimore City
Case No. 24-C-16-004995

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 3491

September Term, 2018

———————————————————————

ENOCH SILVER, III

v.

GREATER BALTIMORE MEDICAL
CENTER, INC., ET AL.

———————————————————————

Kehoe,
Arthur,
Moylan, Charles E., Jr.
(Senior Judge, Specially Assigned)
JJ.

———————————————————————

Opinion by Kehoe, J.

———————————————————————

Filed:  December 21, 2020

* Fader, C.J., did not participate in the decision
to report this opinion pursuant to Md. Rule 8-
605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

## Contents

**Introduction**

**Background**

*The medical-records charges*

*The complaint*

*The motion for class certification*

*The circuit court's denial of the class-certification motion*

**Analysis**

A. Class certification

B. The standard of review

C. The damages class: certification under Md. Rule 2-231(c)(3)

*1. Predominance*

*2. Superiority*

*3. Certification of subclasses*

D. The injunctive-relief class: certification under Md. Rule 2-231(c)(2)

**Conclusion and proceedings on remand**

## Introduction

Enoch Silver, who paid to receive copies of his medical records from each of the appellee hospitals, filed a putative class-action lawsuit against them. He alleged that the hospitals had violated, and were continuing to violate, Maryland statutory law by assessing unreasonable charges for the copies and by engaging in related illegal and unfair trade practices. The Circuit Court for Baltimore City denied Silver's motion to certify two proposed classes for the action—one for damages and another for injunctive relief. And because Silver's individual claims against the hospitals did not meet the circuit court's

amount-in-controversy threshold, the court ultimately granted an unopposed motion to dismiss Silver's case for lack of jurisdiction.

Silver's brief presents three issues which we have consolidated into one: Did the circuit court abuse its discretion in denying Silver's class-certification motion?[1] Our answer is no as to the proposed damages class. However, we do not agree with the circuit court's reasoning as to the proposed class for injunctive relief. We will affirm the circuit court's judgment in part, vacate it in part and remand this case for further proceedings.

## Background

### *The medical-records charges*

Silver's lawsuit arises out of three separate requests for medical records from three unaffiliated hospitals: Greater Baltimore Medical Center ("GBMC"), Medstar Union Memorial Hospital, and The Johns Hopkins Hospital.

On August 20, 2014, Silver, through his attorney, sent GBMC a written request for copies of his personal medical records dating back to July 1, 2014. In his letter to the

---

[1] In his brief, Silver articulates the issues as follows:

1. Whether the Circuit Court erred in denying class certification on the basis that consumers' damages would have to be proven separately, even though both parties demonstrated that costs and charges could be calculated on a class-wide basis without individualized review?

2. Whether the Circuit Court erred in denying class certification of an injunctive class on the basis of an erroneous legal conclusion concerning hybrid class actions?

3. Whether dismissal of the case on jurisdictional grounds should be vacated as it was predicated on the erroneous denial of class certification?

hospital, Silver asked that any records available in electronic format be sent to him on a CD. Within a few days, GBMC delivered the requested records, but in paper format and for a considerable price. The $573.39 invoice for fulfilling the records request included per-page copying fees totaling $506.16 ($0.76 per page, for an estimated 666 pages); a "Basic Fee" of $22.88; a "Handling Fee" of $1.00; a shipping fee of $12.23; and sales tax of $31.12. On July 15, 2015, more than nine months after receiving this invoice, Silver, through his attorney, complained about the amount of these fees. The hospital didn't budge.

Silver's second medical-records request was made to Union Memorial on March 25, 2015. Through his attorney, Silver made a written request for his personal medical records dating back to January 1, 2007. As he had done with GBMC, Silver asked that any records available in electronic format be delivered on a CD. Union Memorial responded as GBMC had: with paper records and an invoice. The bill, for $277.47, included per-page copying fees totaling $228.76 ($0.76 per page, for an estimated 301 pages); a "Basic Fee" of $22.88; a "Handling Fee" of $1.00; a shipping fee of $9.80; and sales tax of $15.03.

Silver's third request was made of Johns Hopkins on October 19, 2015, seeking his personal medical records dating back to July 1, 2014. The written request, once more made through Silver's attorney, asked that electronic records be delivered on a CD. Johns Hopkins delivered one page of paper records for $24.12. This cost included a per-page copying fee of $0.76; a "Basic Fee" of $22.88; and a shipping-and-handling fee of $0.48.

*The complaint*

In September 2016, Silver filed a two-count complaint in the Circuit Court for Baltimore City, proposing to bring a class-action lawsuit against all three hospitals.

In one count, Silver alleged that the hospitals' "exorbitant" medical-records charges violated Md. Code, § 4-304(c) of the Health–General Article ("Health–Gen."), which limits the fees that healthcare providers may charge for the provision of medical records. (A right of action for the violation of Health–Gen. § 4-304(c) is provided under Health–Gen. § 4-309(f), which makes healthcare providers and others who knowingly violate the statute liable for actual damages.) Under the current version of the statute, when a "person in interest" or other authorized person requests medical records, providers are limited to charging "a reasonable cost-based fee for providing the information requested." Health–Gen. § 4-304(c)(2). Subject to some conditions, the statute places a $0.76 per-page cap on fees for "copying and mailing" records. Health–Gen. § 4-304(c)(3)(i). In addition to the per-page fees, the statute permits healthcare providers to charge up to $22.88 for "record retrieval and preparation," plus the actual costs incurred for "postage and handling." Health–Gen. § 4-304(c)(3)(ii). For electronic copies of records stored in an electronic format, the per-page fee is limited to seventy-five percent of the per-page fee noted above, up to $80. Health–Gen. § 4-304(c)(3)(iii). Except for the preparation-and-retrieval fees, the fee limits may be adjusted for inflation. Health–Gen. § 4-304(c)(4). The statute is explicit that the fees are also subject to the "fee limitations that apply to persons in interest under

- 4 -

45 C.F.R. 164.524[2] and any guidance on those limitations issued by the U.S. Department of Health and Human Services." Health–Gen. § 4-304(c)(3)(ii), (iii).

Significantly for this case, Health–Gen. § 4-304(c) was amended on October 1, 2016. *See* 2016 Md. Laws ch. 724. Before the amendment, the statute limited providers to charging "the reasonable cost" of providing requested records, rather than "a reasonable cost-based fee." *Id.* It also capped per-page copying charges at $0.50 and the retrieval-and-preparation fee at $15. *Id.* Both fee caps were subject to annual adjustments for inflation, *id.*, and both parties agree that the inflation-adjusted amounts during the relevant time period would have been $0.76 and $22.88, respectively. Finally, before the 2016 amendment, the statute did not impose a separate limitation on the fees that could be charged for records stored and delivered electronically. *Id.*

---

[2] 45 C.F.R. 164.254 pertains to an individual's right to access her medical records as provided in the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996). In relevant part, the regulation states:

> (4) Fees. If the individual requests a copy of the protected health information or agrees to a summary or explanation of such information, the covered entity may impose a reasonable, cost-based fee, provided that the fee includes only the cost of:
>
> (i) Labor for copying the protected health information requested by the individual, whether in paper or electronic form;
>
> (ii) Supplies for creating the paper copy or electronic media if the individual requests that the electronic copy be provided on portable media;
>
> (iii) Postage, when the individual has requested the copy, or the summary or explanation, be mailed; and
>
> (iv) Preparing an explanation or summary of the protected health information, if agreed to by the individual as required by paragraph (c)(2)(iii) of this section.

In the other count of his complaint, Silver alleged that the hospitals' unreasonable charges, along with their failure to inform requesters that they could access electronic records in electronic format for a lower fee, violated the Maryland Consumer Protection Act, codified at Md. Code, tit. 13 of the Commercial Law Article ("Com. Law"). Among other things, the Maryland Consumer Protection Act prohibits "unfair, abusive, or deceptive trade practice[s]" in the sale of consumer services. Com. Law § 13-303(1). These prohibited practices include the "[f]ailure to state a material fact if the failure deceives or tends to deceive." Com. Law § 13-303(3). The complaint sought both damages and injunctive relief.

*The motion for class certification*

After an unsuccessful motion by the hospitals to dismiss Silver's complaint and a short-lived removal of the case to federal court, Silver filed a motion for class certification in the circuit court. The motion proposed one class for damages and another for injunctive relief. The damages class was to include all patients of the hospitals "who paid, directly or through any agent . . . , to any of [the hospitals or a third-party contractor hired to process records requests] for access to or copies of their medical records from September 9, 2013 through the date of trial in this case." The injunctive-relief class was to include all patients of the hospitals whose requests for access to their records were processed by any of the hospitals or by third-party contractors hired by the hospitals to process records requests.

Silver argued that both proposed classes met the requirements for certification listed in Md. Rule 2-231,[3] which permits class certification

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Md. Rule 2-231(b). Even if all of these threshold requirements are met, Md. Rule 2-231(c) lays down one more hurdle. "Unless justice requires otherwise," at least one of the following conditions must also be met before a class may be certified:

> (1) the prosecution of separate actions by individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

---

[3] At the time the circuit court was considering Silver's class-certification motion, the prerequisites for certification were listed under Md. Rule 2-231(a). The rule was amended on June 1, 2019, and the prerequisites for class certification were shifted to paragraph (b). All other paragraphs were similarly reorganized. All references to Md. Rule 2-231 are to the current version of the rule.

Md. Rule 2-231(c). We discuss these requirements in greater depth later in our analysis.

According to Silver's motion, his proposed classes were sufficiently *numerous*, "easily number[ing] in the thousands." There were questions of law and fact common to the class members, including, he said, whether the hospitals' medical-records charges and related practices violated the aforementioned statutes; whether Silver and the rest of the class members sustained damages; whether it would be inequitable for the hospitals to retain money collected in excess of the "reasonable costs actually incurred to produce the patient records"; whether the class would be entitled to prejudgment interest; and whether that interest should be compounded. Silver said his claims satisfied the *typicality* requirement because they were "identical" to those of other class members; all were similarly "victimized" by the hospitals' medical-records charges. And, finally, Silver argued he would adequately represent the interests of the classes; he was committed and not conflicted by any interests adverse to those of other class members.

Silver also maintained that his proposed classes overcame the additional hurdle of Md. Rule 2-231(c). His proposed injunctive-relief class satisfied the standard under Md. Rule 2-231(c)(2), he said, because the hospitals "are still overcharging members of the class, in violation of Maryland law." The damages class satisfied the predominance and superiority standards under Md. Rule 2-231(c)(3) because "the common issues about damages predominated over any individual claims" and because "the type and size of relief [sought] make individualized claims impracticable or impossible for individual class members."

The hospitals took issue with Silver's position as to almost every class-certification requirement under Md. Rule 2-231, but they placed special emphasis on Silver's inability to satisfy the commonality requirement under Md. Rule 2-231(b)(2) and, for the damages class, the predominance and superiority requirements under Md. Rule 2-231(c)(3).

With respect to commonality, the hospitals argued that there was no common "[c]lasswide" evidence to establish liability or damages for unreasonable fees in violation of Health–Gen. § 4-304(c). For one, there were "material differences" among the hospitals and in the rates charged by each hospital to the potential class members. In a chart provided to the circuit court, the hospitals demonstrated that sixteen different fee schedules applied just to patient (not attorney) requests over the course of the proposed class period:[4]

---

[4] We have very slightly modified the chart for the sake of clarity and reformatted it.

|  | Johns Hopkins | GBMC | Union Memorial |
|---|---|---|---|
| Before Sept. 2014 | 76¢ per page | 76¢ per page | 0¢ for first 10 pages; 76¢ thereafter |
| Sept. 2014 – Jan. 2016 | Sept. – December 2014: 39¢ per page<br><br>2015: 39¢ per page up to 200 pages 12¢ per page thereafter Maximum $400 charge | Records delivered in paper format: 76¢ per page<br><br>Electronic records delivered electronically: 49¢ per page | 0¢ for first 10 pages Records delivered in paper format: 76¢ per page thereafter Electronic records delivered electronically: 49¢ per page thereafter |
| Jan. 2016 – Mar. 2016 | 39¢ per page up to 200 pages 12¢ per page thereafter Maximum $400 charge | 49¢ per page | 0¢ for first 10 pages 49¢ per page thereafter |
| Mar. 2016 – July 2016 | 36¢ per page up to 200 pages 12¢ per page thereafter Maximum $400 charge | 36¢ per page up to 200 pages 12¢ per page thereafter Maximum $400 charge | Free |
| Aug. 2016 – Apr. 2017 | Electronic records delivered electronically: $6.50 flat fee + tax<br>Electronic records delivered in paper: Lower of the state patient rate or 90¢ + 5¢ per page for supplies + tax<br><br>Paper records delivered in paper: 7¢ per page for labor + 5¢ per page for supplies + postage and tax<br><br>Paper records delivered electronically: 7¢ per page for labor + postage (if mailed) and tax<br><br>Hybrid of paper and electronic records delivered electronically: $6.50 flat fee + 7¢ per page for the paper portion + tax + postage if mailed on CD/flashdrive<br><br>Hybrid of paper and electronic records delivered in paper: 7¢ per page for paper portion + lower of the state patient rate or 90¢ for electronic portion + 5¢ per page for supplies + postage and tax | Electronic records delivered electronically: $6.50 flat fee + tax<br><br>Electronic records delivered in paper: Lower of the state patient rate or 90¢ + 5¢ per page for supplies + tax | Free |
| Mar. 2017 – Sept. 2018 | Free | Electronic records delivered electronically: $6.50 flat fee + tax<br>Electronic records delivered in paper: Lower of the state patient rate or 90¢ + 5¢ per page for supplies + tax | Free |

The hospitals also pointed to material differences in the factors that would need to be considered in assessing the reasonableness of the above rates. They asserted that a fact-finder would have to consider each hospital's direct costs (like labor and supplies) and indirect costs (like space and other overhead); how and where each hospital stored its records; the volume of requests processed by each hospital; the unique contractual relationships between the hospitals and a common third-party vendor hired to process records requests; the third-party vendor's own costs; and changes in applicable federal regulations and state law over the course of the class period. Because so many factors would affect the reasonableness of each charged assessed, the hospitals said, "each request during the three year plus period at issue really [would have] to be addressed separately."

Aside from their effect on the reasonableness of the fees charged, the hospitals argued, changes in the applicable laws would also determine whether certain class members had a viable legal claim at all. At some points during the class period, federal regulations promulgated under HIPAA imposed stricter limits than Maryland law on the fees that could be charged for records requests made by patients. And when federal regulations set more stringent standards, the hospitals argued, Maryland law was preempted and any private right of action for violations of Health–Gen. § 4-304(c) was unavailable.

Even if it could be said that the claims of the class members shared common factual or legal issues, the hospitals argued, those common issues would be dwarfed by the fact-intensive "hospital-by-hospital and request-by-request" inquiries necessary to determine the hospitals' liability and damages with respect to each class member. For these reasons,

asserted the hospitals, the circuit court could not find that issues common to members of the class would "predominate" over questions affecting only individual members, as Md. Rule 2-231(c)(3) requires. Nor could the circuit court find that a class action would be "superior" to other methods for resolving the controversy—mainly because an alternative avenue for relief existed. According to the hospitals, all patients "who believe[d] they were overcharged for medical records in violation of HIPAA can register a complaint with the Office of Civil Rights of the Department of Health & Human Services and seek an adjustment to the amount they were charged without incurring the cost of counsel or litigation." (The hospitals did not suggest an alternate avenue for relief for would-be class members who were charged a fee that violated Maryland law but not federal law.)

In addition to the arguments they raised against certifying the proposed damages class, the hospitals gave the circuit court two reasons why Silver's proposed injunctive-relief class did not satisfy the requirements of Md. Rule 2-231(c)(2). First, the hospitals said, "the primary relief sought by [Silver was] money damages, and his claim for an injunction [was] truly secondary." Quoting a decision from the Court of Appeals, the hospitals told the circuit court that "certification under subsection ([c])(2) is appropriate only where injunctive relief is the sole or primary relief sought" and that the rule "does not extend to cases in which the relief prayed relates exclusively or predominately to money damages." *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 782–83 (2000).

Second, the hospitals argued, an injunctive-relief class could not be certified because standing and "cohesiveness" problems made injunctive relief not "appropriate" for the

- 12 -

proposed class. Standing was one problem, they said, because Silver "solely alleges past conduct," and absent evidence that Silver or other class members intended to request medical records in the future, any threat of future injury was "merely hypothetical." Additionally, the hospitals asserted that cohesiveness among class members was lacking because two of the three hospitals no longer charged patients for the reproduction of medical records; the requested relief would not apply to the class "as a whole."

*The circuit court's denial of the class-certification motion*

The circuit court ultimately denied Silver's class-certification motion. According to the court's order, the numerosity prerequisite was "easily met." Silver's claims were typical of those of other class members, despite "some variations in the factual scenarios," and the court believed that Silver and his counsel would "adequately represent and protect the interests of the classes." The circuit court assumed, for the purposes of analysis, that there were factual or legal issues common to all class members sufficient to satisfy the threshold certification requirements of Md. Rule 2-231(b), but that the court "reserve[d] its analysis of the common issues in that it is subsumed under or superseded by the more stringent Rule 2-231([c])(3) analysis."

Turning to the subsection (c)(3) analysis, the court concluded that Silver's proposed damages class failed to satisfy the "more stringent" predominance and superiority requirements of that part of Rule 2-231. The court explained:

> As [the hospitals] have stated, for each medical record request, the trier of fact would need to consider and address: who made the request (patient or attorney); when was the request made to determine the nature of regulations and laws that were in place at that time; which Hospital was the request

- 13 -

directed to in order to evaluate it in context of the applicable rate structures at that time; in what format were the requested records maintained . . . and in what format were the records requested to be delivered before it can begin to assess liability and damages. These individual inquiries would overwhelm any common questions argued by [Silver].

(Cleaned up.) The tendency of the individual issues to overwhelm the common issues also meant that a class action "would not be an efficient or economical method of adjudication," the court decided.

The circuit court also declined to certify the proposed injunctive-relief class. In explaining why, the court noted that "the primary purpose of a [Md. Rule 2-231(c)(2)] class action is nonmonetary relief." The court also noted the theoretical possibility of a "hybrid class action," in which a class could be certified under more than one section of Md. Rule 2-231(c). But because a damages class could not be certified under Md. Rule 2-231(c)(3), the court said, "a hybrid class action shall not be considered." And without appearing to consider the possibility of a *non-hybrid class*—that is, a class seeking purely injunctive relief, certified under Md. Rule 2-231(c)(2) alone—the court decided Silver's proposed injunctive-relief class could not be certified.

Because the circuit court did not certify either of the classes, Silver's individual claims were insufficient to meet the $5,000 minimum amount in controversy required to proceed in the circuit court. *See* Md. Code Courts & Jud. Proc. §§ 4-401 and 4-402. Accordingly, the court granted the hospitals' unopposed motion to dismiss the case for lack of subject-matter jurisdiction. Silver filed a timely appeal.

**Analysis**

Silver's sole contention on appeal is that the circuit court erred in denying his motion to certify his proposed classes. He argues, as he did before the circuit court, that the damages class satisfied the requirements of Md. Rule 2-231(c)(3) and that the injunctive-relief class satisfied the conditions of Md. Rule 2-231(c)(2). Silver maintains that the circuit court abused its discretion in concluding otherwise.

Before we begin our analysis, we note an important limitation on its scope. In class-certification appeals, we typically address the propriety of certification with respect to *each claim* brought in the putative class action. *See, e.g.*, *Cutler v. Wal-Mart Stores, Inc.*, 175 Md. App. 177, 191–200 (2007) (evaluating, on *a claim-by-claim basis*, the propriety of circuit court's denial of class certification). But in addressing Silver's appellate arguments, we will focus on whether Silver's proposed classes should have been certified with respect to his claim alleging the hospitals charged unreasonable fees in violation of Health–Gen. § 4-304(c).[5] This is because Silver's second claim—namely, that the hospitals violated the Maryland Consumer Protection Act by charging fees that exceeded the limits imposed by Health–Gen. § 4-304(c)—is based on factual and legal contentions that are essentially

---

[5] In his brief, Silver states in passing that he "alleges that [the hospitals] failed to disclose to patients the material cost differential they would charge for producing electronic as opposed to paper records, in violation of the Maryland Consumer Protection Act." However, he does not otherwise address the issue and we will not address the contention. *See* Md. Rule 8-504(a)(6) (requiring that briefs contain "[a]rgument in support of the party's position on each issue"). A single sentence is insufficient to satisfy the rule's requirement.

identical to those presented by the standalone claim for violations of the medical-records law itself. Therefore, no separate certification analysis is required. *Cf. Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ___, 136 S. Ct. 1036, 1045 (2016) (noting that the Court would not conduct a separate certification analysis for claims under the federal Fair Labor Standards Act and an Iowa labor statute because "to prove a violation of the Iowa statute, the employees had to do no more than demonstrate a violation of the FLSA").

## A. Class certification

In *Cutler v. Wal-Mart Stores, Inc.*, 175 Md. App. 177 (2007), this Court explained that Maryland litigants have no constitutional or statutory "right" to pursue their claims by class action. *Id.* at 188. "Rather, a class action is a procedural device, created by the judiciary's adoption of a court rule to facilitate management of multiple similar claims." *Id.* Under that rule, the circuit court may permit claims to proceed by way of class action if certain conditions are met. *See* Md. Rule 2-231(b), (c). The court gives this permission through an order certifying the proposed class. *See* Md. Rule 2-231(d).

As we noted above, there are four threshold requirements for class certification. These are listed under Md. Rule 2-231(b): numerosity ("the class is so numerous that joinder of all members is impracticable"), commonality ("there are questions of law or fact common to the class"), typicality ("the claims of the representative parties are typical of the claims of the class"), and adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). While these prerequisites are "necessary,"

they are "not alone sufficient." *Creveling v. Government Employees Insurance Co.*, 376 Md. 72, 88 (2003).

Before it may certify a class, the circuit court must also find, "[u]nless justice requires otherwise," that the class fits within one of three categories defined under Md. Rule 2-231(c):

> (1) the prosecution of separate actions by individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Only the latter two categories are at issue in this case.

The party who seeks class certification bears the burden of proving that he has overcome the hurdles of Md. Rule 2-231(b) and (c). *Creveling*, 376 Md. at 88–89. Accepting as true the allegations made by the named plaintiff regarding the elements of class certification, and refraining from evaluating the underlying merits of the case, the circuit court must decide whether that burden has been carried. *Cutler*, 175 Md. App. at 190. "Nevertheless, the court can go beyond the pleadings to the extent necessary to

understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 727 (2000) (cleaned up).

## B. The standard of review

On appeal, Maryland appellate courts exercise *de novo* review to determine whether the circuit court applied the correct legal standard in granting or denying class certification. *Creveling v. Government Employees Insurance Co.*, 376 Md. 72, 90 (2003) (citing *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 726 (2000)). But they review the ultimate decision to grant or deny a class-certification motion only for an abuse of discretion. *Id.* This is a highly deferential standard. We must affirm the circuit court's decision unless we can conclude "no reasonable person would take the view adopted by the trial court, or [that] the court act[ed] without reference to any guiding rules or principles." *Cutler v. Wal-Mart Stores, Inc.*, 175 Md. App. 177, 189 (2007) (cleaned up). The circuit court's decision must be "violative of fact and logic" to warrant reversal. *Id.* (cleaned up). This deferential posture "appropriately recognizes the factual nature of a class certification inquiry and a trial court's power to manage its docket." *Id.* (quoting *Creveling*, 376 Md. at 91). Generally, "questions within the discretion of the trial court are much better decided by the trial judges than by appellate courts, and the decisions of such judges should only be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred." *Id.* at 189–90 (cleaned up).

C. The damages class: certification under Md. Rule 2-231(c)(3)

Silver's first argument on appeal is that the circuit court abused its discretion in declining to certify his proposed damages class under Md. Rule 2-231(c)(3). He maintains that the circuit court got it wrong as to the predominance of common issues and the superiority of the class-action format. Alternatively, he argues that even if the circuit court's predominance and superiority conclusions were correct with respect to his proposed class, the court should have certified subclasses that conformed to the requirements of Md. Rule 2-231.

These arguments are not persuasive. We address each in turn.

*1. Predominance*

Certification under Md. Rule 2-231(c)(3) requires the circuit court to determine that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." This predominance requirement ensures that the interests of the class are "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It also helps courts to "identify cases in which aggregate treatment would be efficient." 2 William B. Rubenstein, *Newberg on Class Actions* § 4:49 (5th ed. 2012 & Supp. 2020) [hereinafter

*Newberg*].[6] The requirement does not demand that all or even most questions of fact or law involved in the claim be common to all would-be class members. *Id.* § 4:51. Instead, it asks the certifying court to weigh the relative importance of issues common to all class members compared to those issues particular to only some. *See id.* § 4:49 (explaining that the predominance concept "asks whether the common, aggregation-enabling issues in the case are *more prevalent or important* than the non-common, aggregation-defeating, individual issues" (emphasis added)).

The predominance requirement for certification of classes under Md. Rule 2-231(c)(3) is closely related to the commonality prerequisite for the certification of all classes under Md. Rule 2-231(b). This is because before a court can engage in the *balancing* of issues involved in a case to decide which predominate, it must first *classify* those issues as common or individual. *See Newberg* § 4:50 (explaining the predominance requirement as a "[t]wo-step analysis"); *cf. Angeletti*, 358 Md. at 737 ("[T]he less demanding prerequisite of commonality in Rule 2-231([b]) is necessar[ily] subsumed in the more exacting

---

[6] Although *Newberg* focuses on Rule 23 of the Federal Rules of Civil Procedure, the text of Md. Rule 2-231(c) tracks the relevant part of the federal rule. And the Court of Appeals has made it clear that because there is a "dearth of authority" analyzing the specific requirements of Maryland's class-action-certification rule, we may look to sources interpreting federal Rule 23 when we construe and apply Md. Rule 2-231. *See Philip Morris Inc. v. Angeletti*, 358 Md. 689, 724 (2000); *see also Norman v. Borison*, 418 Md. 630, 662 n.23 (2011) ("Md. Rule 2-231 is derived from Federal Rule of Civil Procedure 23. As such, our interpretation of the former may be guided, at least in part, by the history and development of the latter."); *Ford Motor Co. v. Ferrell*, 188 Md. App. 704, 719 (2009) ("Maryland Rule 2-231 and Federal Rule of Civil Procedure . . . 23 are similar. Maryland state courts sometimes look to the federal class action rule and federal cases interpreting that rule for guidance.").

requirement of predominance of common issues over individual questions, found in Rule 2-231([c])(3).").

At the classification step, courts must do more than look at the class members' shared factual and legal questions in the abstract. What matters is how these questions would be answered—how the parties would go about making their case—at trial. *Cf. Ruzhinskaya v. Healthport Technologies,* 311 F.R.D. 87, 105 (S.D.N.Y. 2015) ("[An] inquiry into how liability would be litigated is critical because, to assess whether a class is properly certified, the Court is required to consider, concretely, the evidentiary means by which liability would be established and refuted, at trial.") Factual and legal questions are considered "individual" when "members of a proposed class will need to present evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Newberg* § 4:50). Questions are "common" when they are "susceptible to generalized, class-wide proof"—when class members may use the same evidence to answer them. *Id.* (quoting *Newberg* § 4:50; *see also Ruzhinskaya*, 311 F.R.D. at 106 (explaining that the focus of a predominance analysis is "whether and to what extent the merits determination can be made on the basis of common proof"). Stated differently, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) (emphasis in original)). So, under Md. Rule 2-

231(b), a question is "common" not because it is asked by each member of the proposed class but because to answer the question with respect to one class member is to answer the question with respect to all class members. *Cf. Philip Morris v. Angeletti*, 358 Md. 689, 736 (2000) ("[A]n issue of law or fact is 'common' only to the extent its resolution will advance the litigation of the entire case."); *id.* at 734 (explaining that "common issues" are those that "are litigated only once on behalf of all class members" (cleaned up)).

At the balancing step of the predominance analysis, common issues need not be "dispositive of the action or determinative of the liability issues." *Angeletti*, 358 Md. at 743. Courts need only decide that common issues "constitute a *significant part* of the individual cases." *Id.* (emphasis added) (quoting *Jenkins v. Raymark Industries*, 782 F.2d 468, 472 (5th Cir. 1986)). This is "more of a qualitative than quantitative analysis," *Newberg* § 4.50, conducted without resort to a "magic formula," *Ford v. Chartone, Inc.*, 908 A.2d 72, 88 (D.C. 2006) (quoting *Bynum v. District of Columbia*, 214 F.R.D. 27, 39 (D.D.C. 2003)). A single overriding common issue may be enough to tip the scale in favor of certification. *Newberg* at § 4.51. And the need to make individualized damages determinations for each would-be class member usually is not enough to defeat common-issue predominance. *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013); *Newberg* at § 4.54 ("[Federal] courts in every circuit have uniformly held that the . . . predominance requirement is satisfied despite the need to make individualized damage determinations and a recent dissenting decision of four Supreme Court Justices

characterized the point as 'well nigh universal.'" (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 42 (2013) (Ginsburg and Breyer, JJ., dissenting))).

Silver's argument on appeal is concerned with the classification step in the two-step predominance analysis. On the surface, his contention is that the circuit court's ultimate conclusion as to predominance—that "individual inquiries would overwhelm any common questions" involved in the resolution of the class claims—was erroneous. But the reason *why* he says the court got the predominance balancing question wrong is because the court misidentified the relevant inquiry. The circuit court, Silver argues, should have concluded that "the reasonable cost of copying [was] determinable on a class-wide basis," that is, that this was a common question, not an inquiry particular to individual members of the class. As support for his position, he points to a report written by a plaintiff's expert as proof that each hospital's liability under Health–Gen. § 4-304(c) "can be shown with evidence that is common to the class." He also points us to medical-records cases from other jurisdictions in which class certification was found appropriate.

None of Silver's arguments convince us that it was unreasonable for the circuit court to conclude that the proposed damages class did not satisfy the predominance requirement of Md. Rule 2-231(c)(3). The question of the hospitals' liability for alleged violations of Health–Gen. § 4-304(c) was not "common" within the meaning of the rule and, as a result, the circuit court could conclude that "individual inquiries" into liability and damages would "overwhelm" any common questions presented by the class members' claims.

Silver is correct that the claims of all members of the proposed damages class presented the same general legal question: "To get copies of my medical records, was I charged a fee that exceeded the reasonable costs permitted under Health–Gen. § 4-304(c)?" But presenting shared questions *in the abstract* is not enough. That all members of the class allege the same type of conduct by each hospital violated the same statute makes Silver's claim "typical" of the claims of other class members. *See Angeletti*, 358 Md. at 738 (explaining that a claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [it is] based on the same legal theory"). But as we explained above, for a *question* to be "common" within the meaning of Md. Rule 2-231(c)(3), its *answer* must be "susceptible to generalized, class-wide proof." *Bouaphakeo*, 136 S. Ct. at 1045 (quoting *Newberg* at § 4:50). The answer with respect to one class member must hold with respect to all others, obviating the need for "senseless[ly] . . . repeat[ing] the presentation of the same evidence against the same defendants in successive individual trials." *Angeletti*, 358 Md. at 735 (quoting *ACandS, Inc. v. Godwin*, 340 Md. 334, 395 (1995). That one or some of these class members were charged an unreasonable fee to receive copies of their medical records does not mean that all class members were charged an unreasonable fee. Accordingly, the general question shared among the plaintiffs—*Did the fees charged for my medical records violate Health–Gen. § 4-304(c)?*—is not one of the "questions . . . common to the members of the class" that must "predominate over any questions affecting only individual members" before a class may be certified under Md. Rule 2-231(c)(3).

Even when this overarching question of the hospitals' compliance with the statute is broken down into subparts, few, if any, "common" legal or factual issues emerge. To determine whether the hospitals charged class members fees in excess of those permitted by Health–Gen. § 4-304(c), a trier of fact would have to answer the following: What was the rate being charged by the particular hospital at the time the plaintiff requested her records? Was that rate reasonable? To answer the second question, a trier of fact would have to answer many others: Was the records request made by the patient directly or through her attorney? What were the controlling state and federal statutes and regulations at the time of the request? What were the hospital's direct (labor and supply) costs at the time that the patient was charged? What were its indirect (space and overhead) costs? What was the volume of records requests made of the hospital at the time—so that those direct and indirect costs could be apportioned among requestors? How did the hospital store its records? In what format—print or electronic—were the requested records delivered? To what extent was the hospital relying on a third-party vendor to process its records requests? What did that vendor charge the hospital? And what were that vendor's own costs?

If the class members' claims were tried individually, these questions would have to be answered in every case before a trier of fact could assess the reasonableness of the fees charged by the hospitals. But even if the same questions would be asked by all class members, the questions are not "common" within the meaning of Md. Rule 2-231 because they are not "susceptible to generalized, class-wide proof." *Bouaphakeo*, 136 S. Ct. at 1045 (quoting 2 *Newberg* § 4:50). The medical-records fees paid by the members of the putative

class were calculated under fee schedules that differed among the hospitals and that changed throughout the class period. The reasonableness of these fees would have to be determined by comparing these fees to each hospital's unique direct and indirect costs. These costs were not constant over the relevant time period, and the applicable regulations varied too. As a result of these differences, class members who paid to receive copies of their medical records from Johns Hopkins in September 2014 would have to present evidence that would differ almost completely from the evidence presented by a class member who alleged he was charged an unreasonable fee for records by GBMC in March 2017. Determining the reasonableness of one fee in particular—or simply establishing one of the facts necessary to make the reasonableness determination—would not "advance the litigation of the *entire* case." *Angeletti*, 358 Md. at 736 (emphasis added).

To support his contention to the contrary—that the reasonableness of the hospitals' fees "can be proven using evidence that is common to the class"—Silver points us to a report in which one of his experts compiled and analyzed the cost data for each of the three appellee hospitals over the class period. In this report, Silver's expert writes (emphasis added):

> It is possible to determine the costs incurred in providing medical records to the Class by reference to common evidence. Defendants all used a vendor, Ciox[,] who maintains direct . . . and indirect cost . . . information in the regular course of business. The direct cost information is *specific to each Defendant.* Ciox's indirect costs can be *allocated to each Defendant* using a simple ratio calculation. The Defendant hospitals' costs *can individually be determined* using Medicare cost reports that they supply on an annual basis to the federal government and further discovery during the merits phase of this litigation. . . . *Combining these sources and calculations*, Plaintiff

- 26 -

ultimately will be able to calculate the reasonable costs of providing medical records to Plaintiff and the Class.

The data compiled and analyzed by Silver's expert would simplify the work of the trier of fact in establishing the reasonableness of each hospital's fees. But as Silver's expert acknowledges, the data is still *provider-specific*. It therefore is not evidence "common to the class" because information about one hospital's direct and indirect costs would not be used to assess the reasonableness of another hospital's medical-records charges. At most, the provider-specific evidence is "common" to all who requested records from the hospital from which the cost data is obtained. But as the hospitals point out and Silver does not refute, the hospitals' costs were not constant throughout the class period. This means that even class members who requested copies of records from the same hospital might present cost data that differs significantly depending on the time at which their requests were made.

It's true that some common questions might arise in litigating the class members' claims. For example, the circuit court might be called upon to divine what the legislature intended when it limited providers to charging "a reasonable cost-based fee" under Health–Gen. § 4-304(c)(2). This exercise of statutory interpretation would resolve a legal question common to all class members' claims. Additionally, all three hospitals hired the same third-party vendor to process records requests. Questions about that vendor's own costs—if they were constant throughout the class period—may have been common to all members of the putative class. But the circuit court did not abuse its discretion in determining that any such common questions would be overshadowed by the discrete provider-specific inquiries

required to assess the reasonableness of the more than sixteen fee schedules employed by each of the three hospitals over the course of several years.[7]

The trial court's conclusion that common issues would not predominate is wholly consistent with the cases discussed by the parties in their briefs and by the circuit court in its order denying the motion for class certification.

The facts and procedural posture of *Ford v. ChartOne, Inc.*, 908 A.2d 72 (D.C. App. 2006), are strikingly similar to those of the case before us. Julian Ford sought to bring a class action against ChartOne, a contractor hired by various healthcare providers to handle medical-records requests. *Id.* at 77. Ford's complaint alleged that ChartOne charged unconscionably high fees to patients requesting their records, in violation of a District of Columbia consumer-protection law. *Id.* The trial court denied Ford's motion to certify a class of "all residents of the District . . . who, from August 1999 through the date of any judgment in th[e] case, personally or through an authorized representative, requested and paid more than $0.52 per page for copies of their medical records from a District health care provider that delegated such requests to ChartOne." *Id.* at 78. Among other reasons for this denial, the trial court concluded that the proposed class could not satisfy the

---

[7] A trier of fact would also have to separately determine each class member's damages. These individualized inquiries would be relatively straightforward: Amount Paid – Reasonable Fee = Damages. The damages calculations, alone, would not likely be a barrier to concluding that common questions predominate over individual questions. *See Newberg* at § 4.54. The problem in this case is that the determinations of liability—calculating reasonable cost-based fees for each hospital over time—also hinge largely on issues not common to all class members.

predominance requirement of the District's analog to Md. Rule 2-231(c)(3) "because ChartOne's liability . . . to members of the proposed class would turn on factual questions unique to each class member." *Id.* at 85.

The District of Columbia Court of Appeals reversed, flatly rejecting the trial court's rationale for concluding common issues would not predominate in the class-action litigation. "The premise of this ruling," the court said, "was that since the actual cost to ChartOne of producing a patient's medical records varies depending on the patient's particular medical history, the value of the service that ChartOne provided and hence the fairness of the fee that it charged also varied *with each records request*." *Id.* at 90 (emphasis added). According to the appellate court, the trial court's belief that the fairness of ChartOne's fees should be determined on a request-by-request basis "reflect[ed] a misconception as to how the lawfulness of uniform prices is to be evaluated." *Id.* at 90. The court explained:

> ChartOne allegedly priced its services by setting uniform clerical, per page, and shipping fees for the medical records requests that it handled. Being uniform, those fees did not vary in each transaction to reflect the fluctuating costs attributable to the medical history of the particular patient whose records were involved in the transaction. The legitimacy, in principle, of charging uniform fees across the board in lieu of individualized fees is not in doubt; indeed, businesses usually find it utterly impractical to charge each customer a different fee based on all the varying actual costs of fulfilling an order. The question of whether a uniform price is unreasonably favorable to the seller . . . therefore cannot be answered one transaction at a time by comparing the uniform fees charged in each transaction with the actual, fluctuating costs allocable to that transaction. . . . This is not to say that ChartOne's costs of servicing records requestors are irrelevant. It is to say that *in evaluating the reasonableness of the company's uniform clerical, copying, and shipping fees in relation to its costs, the relevant comparison is to the company's average costs.*

> *A separate price–cost comparison therefore does not have to be carried out with respect to each class member's transaction. The relevant comparison is essentially the same for each member of the proposed plaintiff class, which is to say it calls for common proof.* As the individual cost variations cited by the trial court thus are immaterial, the court erred in finding that they justified the denial of class certification.

*Id.* at 91 (emphasis added) (cleaned up).

In this case before us, *Ford* cuts against the hospitals' position that "[t]he evidence for each Hospital, type of requester, form of request, form of production, and form of storage *will differ by class member and impact each member's individual right to recover.*" (Emphasis added.) For the reasons outlined by the District of Columbia's Court of Appeals and the reasons we suggested above, a schedule-by-schedule approach, rather than a request-by-request approach, is the more appropriate way to assess the reasonableness of the fees charged by the hospitals. Like the vendor in *Ford*, the hospitals used uniform schedules to calculate fees for medical-records requests. And in evaluating the reasonableness of these schedules, just as in *Ford*, the relevant comparison is each hospital's average costs at the time each fee schedule was in place.

*Ford* does not, however, provide support for class certification under the facts of this case. Like Silver's, Ford's proposed class included patients who requested medical records from more than one healthcare provider. But Ford was suing a *single* vendor used by these providers, alleging the unreasonableness of *uniform* fees charged to all members of the proposed class. It was for this reason that the District of Columbia Court of Appeals held that the relevant price–cost comparison was "essentially the same for each member of the proposed class." *Id.* at 908 A.2d at 91. The hospital-specific variations in prices charged

and processing costs incurred that would have to be litigated in Silver's case were not present in *Ford*—at least on the record before the appellate court. For the first time on appeal, ChartOne suggested that its pricing scheme had not been "perfectly uniform" throughout the class period and had instead "varied somewhat depending on the particular health care provider and time period involved and the type of request or requestor." *Id.* The *Ford* court acknowledged that these variations "theoretically could [bear] on whether the requirements of Rule 23 [were] satisfied." *Id.* at 92. But because "ChartOne did not bring these facts to the attention of the trial court, . . . . the record d[id] not permit [the court's] informed consideration of them either." *Id.*

The class-certification decision in *Ruzhinskaya v. HealthPort Technologies, LLC*, 311 F.R.D. 87 (S.D.N.Y. 2015), is similarly unavailing. There, Tatynana Ruzhinskaya sued HealthPort, a vendor hired by healthcare providers to process medical-records requests, alleging that HealthPort systematically overcharged for records in violation of New York statutes similar to Health–Gen. § 4-304(c)) and the Maryland Consumer Protection Act. *Id.* at 91. Ruzhinskaya's proposed class, like Silver's, would have included people who had requested records from multiple healthcare providers over the course of several years, but the class was defined much more broadly than Silver's, "to include all requests by any patient or her representative for patient records from [more than 500] healthcare provider[s] in New York State for which HealthPort charged 75 cents per page." *Id.* at 93. The federal district court denied the class-certification motion, concluding that with the class defined as it was, "common issues of fact and law would not predominate over individualized ones,

as required by Federal Rule of Civil Procedure 23(b)(3)." *Id.* at 91. The court told Ruzhinskaya, however, that it "st[ood] ready to certify a narrower class," defined to include only those who had requested records from the healthcare provider from whom Ruzhinskaya had requested records. *Id.* at 110. Ruzhinskaya did what the court suggested, and a few weeks later, the court certified a narrower class. *See Ruzhinskaya v. HealthPort Technologies, LLC*, No. 14 Civ. 2921, 2015 WL 9255562 (S.D.N.Y. Dec. 17, 2015).

In explaining its decision not to certify the class as initially defined by Ruzhinskaya, the federal district court "emphatically reject[ed]" HealthPort's argument that individualized questions would necessarily predominate at trial because "each putative class member's claim is as unique as his or her request for records, and the cost of fulfilling that request must be calculated individually." *Ruzhinskaya*, 311 F.R.D. at 102–03. HealthPort's fees were assessed uniformly, and the company had no request-specific data with which to make these individualized calculations of processing costs. *Id.* The court also rejected Ruzhinskaya's position that common issues would predominate because a reasonable fee for processing records requests could be "determined through generalized proof across all New York State requesters," by averaging HealthPort's costs to process requests for records from all the healthcare providers that it served. This statewide-average approach to fee reasonableness was theoretically possible, the court acknowledged, but HealthPort was entitled to—and appeared prepared to—defend against liability "on the basis of provider-specific costs, which vary dramatically." *Id.* at 105. The court explained:

> A trier of fact that was persuaded by HealthPort's provider-level cost
> analysis . . . would . . . be obliged to make different liability findings on a

provider-by-provider basis. Ruzhinskaya's statewide class would thus sweep in plaintiffs whose requests for medical records generated a range of different costs, depending on the costs particular to the provider's circumstances. It would treat all such plaintiffs alike, despite the possibility that some of them might be entitled to relief based on the provider-level costs incurred and others might not be.

. . . .

[B]ecause the class includes claims that HealthPort may choose to defend on the basis of provider-level costs, a statewide class would fail to satisfy the predominance requirement. Provider-level inquiries would unavoidably predominate, and overwhelm common inquiries, in establishing both liability and damages at trial.

*Id.* at 106–07.

The *Ruzhinskaya* court's proposed solution to the predominance problem was "a class drawn at the level of requests to Beth Israel, Ruzhinskaya's provider." *Id.* at 107. Another solution it considered was the certification of "provider-level subclasses." *Id.* But this subclass approach, the court said, "would result in a host of separate inquiries into costs incurred, potentially one for each of the 500-some providers implicated by Ruzhinskaya's proposed class." *Id.* In other words, although subclasses would solve the predominance problem, they would render the action "unmanageable," contravening Rule 23(b)(3)'s requirement "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

Silver attempts to distinguish this case from *Ruzhinskaya* in two ways. First, Silver says he "never proposed averaging charges across the three hospitals that overcharged him" to determine what would be a reasonable cost-based fee under Health–Gen. § 4-403(c). Instead, he was prepared to litigate the hospitals' liability using "separate, facility-specific

cost data for each hospital." Second, he notes that his proposed class would include patients who requested records from only three hospitals, not 500, leaving the circuit court without the "manageability problem" that confronted the federal district court in *Ruzhinskaya*.

With respect to the circuit court's predominance conclusion, these are distinctions without a difference. It is certainly appropriate to rely on "separate, facility-specific cost data," not statewide averages or request-specific data, to evaluate the reasonableness of the fees charged by the appellee hospitals. But this facility-specific approach to determining liability is what ensures that individual issues would predominate in an action pursued by Silver's proposed class. Common issues would predominate only "within the universe of patient requests *to which [the facility-specific cost data] apply*." *Ruzhinskaya*, 311 F.R.D. at 103 (emphasis added). Patients challenging the reasonableness of the fees charged by Johns Hopkins would present and refute evidence about the processing costs generated *at Johns Hopkins*. Patients who requested records from Union Memorial would litigate an entirely different set of *Union Memorial-specific* costs. The fact that liability would be determined on the basis of provider-level data is exactly why the court in *Ruzhinskaya* concluded certification of a class encompassing more than one healthcare provider was inappropriate. Only with a single-provider class—or with single-provider subclasses— could the reasonableness of the challenged fees be "resolved uniformly across the class such that common questions would then predominate." *Id.* at 108.

That Silver's proposed class would challenge the fees assessed by only three healthcare providers—as opposed to the more than 500 providers whose costs were at issue in

*Ruzhinskaya*—does not solve the predominance problem either. This more focused attack on medical-records fees would have made Silver's class action more manageable if the circuit court had divided the proposed class into provider-level subclasses—the solution considered and ultimately rejected by the *Ruzhinskaya* court. (We will consider the propriety of subclasses in the context of Sliver's claims later in our analysis.) But the circuit court did not create subclasses, so the predominance problem remains. The class members sought to challenge the reasonableness of *facility-specific* fees by comparing them to the *facility-specific* costs of more than one hospital. The circuit court could have reasonably concluded that these *facility-specific* issues would overwhelm any factual or legal issues resolvable using *class-wide* or *common* proof, whether Silver was suing three providers or 300.

## *2. Superiority*

Before a class may be certified under Md. Rule 2-231(c)(3), the circuit court must also determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The text of Md. Rule 2-231(c)(3) provides several factors "pertinent" to the circuit court's superiority determination:

> (A) the interest of members of the class in individually controlling the prosecution of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, (D) the difficulties likely to be encountered in the management of a class action.

The final factor in this list "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Angeletti*, 358 Md. at 765.[8]

The foregoing list of "pertinent" factors is not exhaustive. *Id.* at 763. The court has discretion to consider "whatever other factors it deems relevant" to the superiority determination. 7AA Charles Alan Wright et al., *Federal Practice and Procedure* § 1777 (3d ed. 2005). One such factor, implied by the very nature of a superiority requirement, is the existence and relative advantages of alternative methods of adjudication. *See In re TWL Corp.*, 712 F.3d 886 (5th Cir. 2013) ("In requiring a court to find that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, Rule 23 necessarily suggests a comparative process . . . [in which courts] assess the relative advantages of alternative procedures for handling the total controversy." (cleaned up)).

In its order denying Silver's motion to certify the proposed damages class, the circuit court concluded that Silver had not satisfied the superiority requirement of Md. Rule 2-231(c)(3). The class-action format "would not be an efficient or economical method of adjudication," the court said, for the same reason the proposed classes failed to meet the predominance standard: the individual issues involved would "overwhelm" the common

---

[8] The Court of Appeals digs deeper into the other factors in its opinion in *Angeletti*. *See* 358 Md. at 763–66.

issues, making the class action unmanageable.[9]

On appeal, Silver challenges this conclusion. He does not cast his argument in terms of the four "pertinent" factors outlined in Md. Rule 2-231(c)(3). Instead, Silver argues that the circuit court should have found that a class action is superior to any other method of resolving the class members' claims because it is the *only* method to do so. He points to the "relatively small size of the individual claims at stake and the high cost of litigation" to suggest that class members' claims could not feasibly be brought in separate suits.

We are not persuaded that the circuit court's superiority conclusion amounted to an abuse of discretion, that is, that "no reasonable person would take the view adopted by the trial court, or [that] the court act[ed] without reference to any guiding rules or principles." *Cutler v. Wal-Mart Stores, Inc.*, 175 Md. App. 177, 189 (2007) (cleaned up). The circuit court's manageability concern was valid. It was on manageability grounds alone that the federal district court in *Ruzhinskaya* concluded that the proposed statewide class was not superior. "A jury," the court explained, "potentially could be called upon to resolve disputes regarding cost inputs at hundreds of providers." *Ruzhinskaya*, 311 F.R.D. at 108.

---

[9] While the circuit court could have engaged more expansively with the other "pertinent" factors outlined in Md. Rule 2-231(c)(3), the brevity of the court's analysis does not pose problems for our review on appeal. The circuit court was not required to include every relevant consideration in its written order. *See Cobrand v. Adventist Healthcare, Inc.*, 149 Md. App. 431, 445 (2003) ("[A] trial judge's failure to state each and every consideration or factor in a particular applicable standard does not, absent more, constitute an abuse of discretion, so long as the record supports a reasonable conclusion that appropriate factors were taken into account in the exercise of discretion."). And Silver does not argue that the circuit court failed to consider the proper factors or that the court considered some improper factor in reaching its superiority conclusion.

Silver's proposed class would implicate only three providers, not hundreds. But as we explained in our predominance analysis above, the reasonableness of the fees charged by these providers would still have to be determined by reference to hospital-specific cost data applied to the more than sixteen different fee schedules in effect throughout the class period. The circuit court did not abuse its discretion in concluding that resolving all of these variables would be unduly burdensome for a jury.

The manageability problems raised by the circuit court may have appeared less important to its superiority analysis if a class action were the only feasible way for members of the proposed class to bring their claims against the hospital. We readily acknowledge the practical difficulties of claim-by-claim resolution stressed in Silver's arguments to this Court. *See Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 153 (2013) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (quoting *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980)). But the class action, *as conceived by Silver*, was not the "only method" for resolving the would-be class members' claims. The individualized inquiries that would otherwise have dominated the litigation could have been minimized by redefining the class to include only the claims of patients—as opposed to patients and their attorneys— who requested records from one of the three hospitals. The class could have been defined even more narrowly to include only those requests made under one of the more than sixteen fee schedules employed by the hospitals over the class

period. Subclasses could have been created along these same lines. With a provider- or schedule-level class, or subclasses limited in the same way, individualized issues would no longer "overwhelm" common issues in making liability determinations under Health–Gen. § 4-304(c).

Finally, we note that even if we were to conclude that the circuit court's superiority determination amounted to an abuse of discretion, certification of Silver's proposed damages class under Md. Rule 2-231(c) still would have been inappropriate. Superiority is one of two preconditions for class certification under Md. Rule 2-231(c)(3). *See* Md. Rule 2-231(c)(3) (explaining that the court must find "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members *and* that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (emphasis added)). And as we explained in the previous section of our analysis, the circuit court did not abuse its discretion in determining that the other precondition for certification, the predominance requirement, was not satisfied.

### 3. Certification of subclasses

Maryland's class-action rule provides that, "[w]hen appropriate," a proposed class "may be divided into subclasses and each subclass treated as a class." Md. Rule 2-231(e). Generally, no formal motion is required to create subclasses; the circuit court may act *sua sponte*. 7AA Charles Alan Wright et al., *Federal Practice and Procedure* § 1790 (3d ed. 2005). But this discretion to carve out subclasses from the plaintiff's proposed class definition is subject to an important limitation: Any subclass formed under Md. Rule 2-

231(e) must independently satisfy the certification requirements outlined in Part A of our analysis. *Id.*; *see also Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 599 (7th Cir. 1993) ("Subclasses must satisfy the class action requirements before they may be certified."); *Paxton v. Union National Bank*, 688 F.2d 552, 559 (8th Cir. 1982) (same).

As we explained above, the creation of subclasses defined by patients who requested records from a specific hospital while a discrete pricing scheme was in effect may have solved the predominance and superiority problems identified by the circuit court. Within these subclasses, all patients would utilize the same facility-specific cost data to challenge the reasonableness of the fees they were charged, even if individualized damages calculations would still be required.

As we understand his arguments to this Court, Silver contends that the circuit court abused its discretion by not creating these common-issue-enabling subclasses on its own initiative. We do not agree. While the circuit court has the authority to modify a proposed class definition or break that class into subclasses *sua sponte*, the court is not obligated to exercise this authority. *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 408 (1980) ("[I]t is not the District Court that is to bear the burden of constructing subclasses. That burden is upon the respondent and it is he who is required to submit proposals to the court. The court has no *sua sponte* obligation so to act."); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) ("The district court is not to bear the burden of constructing subclasses or otherwise correcting Rule 23(a) problems; rather, the burden is on Plaintiffs to submit proposals to the court." (cleaned up)); *Allison v. Citgo*

*Petroleum Corp.*, 151 F.3d 402, 420 n.15 (5th Cir. 1998) ("Without any help from the plaintiffs, the district court certainly did not abuse its discretion in not attempting to devise a workable subclassing plan of its own."); *In re McCormick & Company, Inc.*, 422 F. Supp. 3d 194, 225 (D.D.C. 2019) ("Courts can allow subclassing on motion or *sua sponte*, but are under no obligation to do so, and the burden remains on the party seeking certification."); *Newberg* § 7:30.[10] To put it another way, that the circuit court possessed the discretion to define subclasses *sua sponte* does not mean that the circuit court abused that discretion by failing to do so in the absence of a request from Silver.

Moreover, simply dividing Silver's proposed class into provider-level or schedule-level subclasses may not have been appropriate in this case. The members of these hypothetical classes would have challenged the reasonableness of sixteen fee schedules employed by the hospitals over the class period. Were a subclass created for each fee schedule, to ensure that all members of the subclass would rely on common proof to establish liability, there would be sixteen subclasses. The circuit court could have reasonably concluded that a class action involving sixteen subclasses with few, if any, issues common to *all* class members, was not manageable and, as a result, would not satisfy the superiority requirement of Md. Rule 2-231(c)(3).

---

[10] The court in *Robidoux v. Celani*, 987 F.2d 931 (2d. Cir. 1993) reached a different result but what was at issue in that case—allegations that Vermont was unreasonably delaying the processing of applications for public assistance—was of considerable greater public importance than Silver's claim. Moreover, the Court concluded that the claims could be divided into three subclasses. *Id.* at 937

There is another defect in Silver's assertion that the circuit court erred by failing to *sua sponte* order that the action be broken into subclasses. Any subclass would have to independently satisfy the class certification requirements outlined in Md. Rule 2-231, including the adequacy-of-representation requirement under Md. Rule 2-231(b). Although Silver paid to receive records from each of the three appellee hospitals, only three of the more than sixteen challenged fee schedules would have applied to his requests.[11] Silver therefore would not be a member of the subclasses challenging the more than twelve other fee schedules in effect throughout the class period. And because Silver was the only named plaintiff in this case, the subclasses of which Silver was *not* a member would be left without a "representative part[y to] fairly and adequately protect [their] interests." Md. Rule 2-231(b). For this reason, certification of most of the schedule-level subclasses would not have been appropriate.

We find no fault in the way that the circuit court handled the subclass issue (or rather non-issue as the matter was never raised to that court). Courts very seldom err for not doing something that no one asks them to do. After the court denied Silver's motion to certify his proposed class, the hospitals filed an *unopposed* motion to dismiss the action. Silver now says that if the circuit court believed that creating subclasses would have solved the predominance and superiority problems it identified, the court "could have said so." He

_____

[11] Specifically, the fee schedule applicable to records requests made of GBMC on August 20, 2014; the fee schedule applicable to records requests made of Union Memorial on March 25, 2015; and the fee schedule applicable to records requests made of Johns Hopkins on October 19, 2015.

misunderstands who bears the burden of defining a certifiable class. It was Silver's duty to speak up—not the circuit court's.[12]

D. The injunctive-relief class: certification under Md. Rule 2-231(c)(2)

Silver's second appellate contention is that the circuit court abused its discretion in declining to certify his proposed injunctive-relief class under Md. Rule 2-231(c)(2).

---

[12] The hospitals include a possible preemption defense in the list of individualized factual and legal issues that would have overwhelmed the common issues to be resolved in adjudicating the claims brought by the members of proposed damages class. They contend that, although regulations promulgated under HIPAA permit states to establish more stringent restrictions on the amounts patients can be charged for medical-records requests, the federal regulations "set standards more stringent than Maryland law at some (not all) times and to some (not all) requests covered by [Silver's] class definition." According to the hospitals, "[w]hen HIPAA [regulations were] more restrictive, Maryland law was preempted." They argue that HIPAA provides no private right of action, so class members who paid for medical records during this alleged period of preemption would have no right to recover for any unreasonable fees. For authority they cite, without further discussion, *Johnson v. Quander*, 370 F. Supp. 2d 79 (D.D.C. 2005) and *Gawry v. Countrywide Home Loans*, 640 F. Supp. 2d 942 (N.D. Ohio 2009).

The issue in *Quander* was whether a provision of HIPAA that prohibits the improper disclosure of certain types of medical information (42 U.S.C. §§ 1320d-5–d-6) barred the District of Columbia from submitting Quander's DNA information to a DNA database pursuant to the DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. § 14135b. The court held that there was no private cause of action to enforce §§ 1320d-5–d-6. 370 F. Supp. 2d at 100. Damages were not at issue in the case and the hospitals do not explain why *Quander's* narrow holding should be further extended. For its part, *Gawry* has nothing at all to do with HIPAA.

Md. Rule 8–504(a)(6) requires that briefs contain "argument in support of the party's position on each issue." "[W]here a party fail[s] to cite any relevant law on an issue in its brief, [appellate courts] will not "rummage in a dark cellar for coal that [may or may not] be there." *HNS Development, LLC v. People's Counsel for Baltimore County*, 425 Md. 436, 459 (2012) (quoting *Konover Prop. Trust v. WHE Assocs.*, 142 Md. App. 476, 494 (2002) ((cleaned up). We will not address the hospitals' preemption argument.

Certification under Md. Rule 2-231(c)(2) requires the circuit court to determine that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." This language can be boiled down to two requirements: the *act* requirement (i.e., that the party opposing the class must have "acted or refused to act on grounds generally applicable to the class") and the *injunction* requirement (i.e., that the plaintiffs must be seeking "final injunctive relief or corresponding declaratory relief" that is appropriate "with respect to the class as a whole"). *Newberg* § 4:27.

The act requirement of Md. Rule 2-231(c)(2) "focuses on the single question of whether the defendant maintains a policy that affects a group of persons similar to those proposed to constitute the class in the present case." *Newberg* § 4:28. "The act requirement is satisfied so long as the action or inaction 'has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.'" *Id.* (quoting Rules Advisory Committee Notes, 39 F.R.D. 69, 102 (1966)).

The injunction requirement "encompasses three components: the requested relief must be (1) final, (2) injunctive or declaratory, and (3) appropriate to the class as a whole." *Id.* § 4:29. The first component—that the requested relief be "final"—simply bars certification for classes seeking "only a provisional remedy." *Id.* The second—that the relief be "injunctive or declaratory" as opposed to an award of damages—requires courts to examine

the nature of the relief sought by the proposed class. Usually, it is "is easy to ascertain whether the remedy that the plaintiffs seek is injunctive, hence enabling [Rule 2-231(c)(2)] certification, as opposed to monetary, which generally bars certification." *Newberg* § 4:31.[13]

The third component of the injunction requirement—that injunctive relief be appropriate to the class "as a whole"—focuses on the indivisible nature of the remedy sought. The federal counterpart to Md. Rule 2-231(c)(2) permits certification "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* (emphasis in original); *Newberg* § 4:32 (quoting *Shook v. Board of County Commissioners of County of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008)); *see also* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) (explaining that courts considering a motion to certify a class under the federal and state counterparts to Md. Rule 2-231(c)(2) must focus on "the indivisible nature of the injunctive or declaratory remedy

---

[13] *See Philip Morris Inc. v. Angeletti*, 358 Md. 689, 783–86 (2000) (analyzing the nature of a claim for medical monitoring and concluding that, "notwithstanding the possibility that a medical monitoring claim might legitimately be framed as one seeking equitable relief," the relief sought by the plaintiffs was "of a fundamentally monetary nature").

warranted," certifying the class if "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them").

This indivisible-relief component of the injunction requirement is closely related to a "recurring theme[]" in cases involving certification under Md. Rule 2-231(c)(2) and its federal and state counterparts: "that ([c])(2) classes must be *cohesive*." *Newberg* § 4:32 (emphasis in original). The cohesiveness requirement is "similar to Rule 2-231([c])(3)'s prerequisite of predominance," *Angeletti*, 358 Md. at 785, ensuring that "the class's claims are common ones and that adjudication of the case will not devolve into consideration of myriad individual issues," *Newberg* § 4:34. By demanding cohesiveness among class members' claims, courts "ensur[e] that the class members' interests are indeed intertwined in the manner that ([c])(2) requires, namely such that final injunctive relief would be 'appropriate respecting the class as a whole.'" *Id.*; *cf. Dukes*, 564 U.S. at 363 ("When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate[.]").

The cohesiveness requirement also protects the due process rights of the members who make up the Md. Rule 2-231(c)(2) class. Unlike members of Md. Rule 2-231(c)(3) classes, members of Md. Rule 2-231(c)(2) classes are not entitled to receive notice of class certification and generally cannot opt out of the class. *See Angeletti*, 358 Md. at 785; *see also* Md. Rule 2-231(f). "Given the due process concerns that are triggered by the mandatory nature of ([c])(2) classes, courts are hesitant to certify such classes, and they use cohesiveness to ensure that certification is called for. . . ." *Newberg* § 4:34. The Court

of Appeals has suggested that this cohesiveness requirement "is even more demanding and difficult to satisfy" than Md. Rule 2-231(c)(3) predominance. *Angeletti*, 358 Md. at 785.

Another recurring issue for courts presented with class-certification motions is whether a class seeking both injunctive and monetary relief may be certified under the federal counterpart to Md. Rule 2-231(c)(2). The text of the rule does not specifically preclude monetary relief, but it clearly focuses on "final injunctive or . . . declaratory relief." Recently, in light of this focus and because of the due-process concerns involved in actions for money damages, the Supreme Court has held that certification under Federal Rule of Civil Procedure 23(b)(2) is inappropriate for claims for monetary relief that are more than "incidental" to the injunctive or declaratory relief sought by the class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *cf. Angeletti*, 358 Md. at 782 (decided before *Dukes* and explaining that certification under Md. Rule 2-231(c)(2) "does not extend to cases in which the relief prayed relates exclusively or predominately to money damages").[14] One way to avoid the limitation on monetary damages in actions to be certified under the federal and state counterparts to Md. Rule 2-231(c)(2) has been to certify a "hybrid class action" under multiple sections of Md. Rule 2-231(c). *See Newberg* § 4:38. That is, courts may certify a class under Md. Rule 2-231(c)(2) for the portion of the case

---

[14] Whether claims for "incidental" monetary relief could be certified under Federal Rule of Civil Procedure 23(b)(2) was an issue that the Court left for another day. *See Dukes*, 564 U.S. at 366 ("We need not decide in this case whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause.").

concerning injunctive and declaratory relief and separately certify a class under Md. Rule 2-231(c)(3) for the portion of the case requesting monetary damages. *Id.*

In the case before us, Silver's motion to certify his proposed injunctive-relief class received relatively little attention (in fact, almost none) in the proceedings before the circuit court. In his initial motion to certify the proposed classes, for example, Silver dedicated two sentences to arguing why certification under Md. Rule 2-231(c)(2) was appropriate:

> Certification of the Injunctive Class is appropriate for the Class under Md. Rule 2-231([c])(2) because the relief sought—an Order limiting Defendants to charging no more than their reasonable costs—is primarily injunctive based on the common issues of the class in this case. The evidence is clear that Defendants are still overcharging members of the class, in violation of Maryland law, which only allows Defendants to charge a reasonable, cost-based fee.

In their motion opposing certification, the hospitals gave several reasons why the court should not certify the injunctive-relief class under Md. Rule 2-231(c)(2). First, the hospitals said, the "primary relief" sought by Silver was "money damages"; his claim for injunctive relief was "truly secondary." On this basis alone, the hospitals said, certification under Md. Rule 2-231(c)(2) should be denied. Second, the hospitals argued, the injunctive-relief class's claim was not justiciable. Silver did not "allege[] or put forth any evidence that he intends to request medical records in the future from any of the hospitals." The threat of future injury to Silver and the other class members was merely "conjectural or hypothetical," not "real and immediate." *See Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (explaining that injunctive relief is appropriate only where the plaintiff can show he "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and

immediate, not conjectural or hypothetical"). Finally, the hospitals said, Silver could not establish the requisite "cohesiveness" among class members. The hospitals noted that two of the three hospitals no longer charged patients to receive copies of their medical records. Accordingly, the hospitals said, the injunction sought would not apply to the class "as a whole."

In his reply to the hospitals' opposition motion, Silver argued that even though he was also seeking monetary relief for the class proposed to be certified under Md. Rule 2-231(c)(3), certification of the proposed injunctive-relief class under Md. Rule 2-231(c)(2) would not be problematic. This was because, he said, "[c]ourts routinely certify 'hybrid' class actions that combine ([c])(2) injunctive classes and ([c])(3) damages classes." Additionally, Silver maintained that the cohesiveness and justiciability were not barriers to certification in his case. Adjudicating his claims, he said, would not require the trier of fact to resolve myriad individual issues, and Silver had standing to obtain injunctive relief because "it is quite likely that [he] will request copies of his medical records from [the hospitals] at some time in the near future."

The proposed injunctive-relief class received even less attention at an October 15, 2018 hearing before the circuit court. Silver argued that certification under Md. Rule 2-231(c)(2) was appropriate because the injunction sought by the proposed class "will affect all class members the same." The hospitals argued that certification was inappropriate because Silver's claim for damages "predominat[ed]" over his claim for injunctive relief.

In its subsequent written order denying Silver's motion to certify the proposed classes, the circuit court's discussion of certification under Md. Rule 2-231(c)(2) was brief (emphasis added):

> A 2-231([c])(3) class action requires that 1) "the party opposing the class must have 'acted or refused to act on grounds generally applicable to the class'" and 2) "the [defendant] must be seeking 'final injunctive relief or corresponding declaratory relief' that is appropriate 'with respect to the class as a whole.'" 2 Conte & Newberg, §4:27 at 103. The language of the rule does not explicitly exclude money damages but the primary purpose of a ([c])(2) class action is nonmonetary relief. [*Newberg*], §4:37. Generally, money damages are not available in ([c])(2) actions. Recognizing that the damages claim could conflict with certification under Rule 2-231([c])(2), Plaintiff argues to this court that certifying a hybrid class action would be appropriate in that ". . . this approach allows consistent treatment of class-wide equitable relief and also provides an opportunity for class members to opt out of the damages claims." *However, this court has found that a class cannot be maintained pursuant to Rule 2-231([c])(3), therefore a hybrid class action shall not be considered. For the above reasons, this court finds that the Injunctive class cannot be maintained pursuant to Maryland Rule 2-231([c])(2).*

As we understand its analysis, the court concluded that because it had decided that the proposed damages class could not be certified under Md. Rule 2-231(c)(3), no "hybrid" action was possible and, therefore, the injunctive-relief class could not be certified under Md. Rule 2-231(c)(2).

We agree with Silver that the circuit court's analysis misses the mark. That Silver's proposed *damages* class sought primarily monetary relief would have precluded certification of the *damages* class *under Md. Rule 2-231(c)(2)*. And this means that the only way to have certified both of Silver's proposed classes was in a "hybrid" action—with the damages class certified under Md. Rule 2-231(c)(3) and the injunctive-relief class separately certified under Md. Rule 2-231(c)(2), as Silver requested in his motion for class

certification. The circuit court's conclusion that the *damages* class could *not* be certified *under Md. Rule 2-231(c)(3)* ensured Silver's action, if it proceeded, would not be a "hybrid" action. But the decision to not certify the damages class did not, in and of itself,¸ preclude the court from certifying Silver's proposed injunctive-relief class under Md. Rule 2-231(c)(2), if the court concluded that the proposed class independently satisfied the requirements for certification under Md. Rule 2-231.

Because the circuit court's ruling appears to have resulted from a misunderstanding of the requirements for class certification under Md. Rule 2-231(c)(2), we conclude that the circuit court abused its discretion in denying Silver's motion to certify his proposed injunctive-relief class under Md. Rule 2-231(c)(2). This is because "courts 'do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature.'" *Morton v. Schlotzhauer*, 449 Md. 217, 231 (2016) (quoting *Wilson–X v. Department of Human Resources*, 403 Md. 667, 674–75 (2008)).

In their briefs to this Court, the parties set out alternative grounds as to why certification of an injunctive relieve class is appropriate (Silver) or inappropriate (the hospitals).

We are not going to address any of them at this juncture. The decision whether to certify a class is discretionary, entrusted to the circuit court's sound judgment and based on a variety of factors with which the circuit court is much more familiar than we are. We are aware that often "considerations of judicial economy justify the policy of upholding a trial court decision which was correct although on a different ground than relied upon."

*City of Frederick v. Pickett*, 392 Md. 411, 424 (2006) (cleaned up). But this principle is limited to cases in which the alternative ground—for example, as in *Pickett*, correcting the circuit court's erroneous interpretation of a statute—is "within the power of the appellate court to formulate." *Id.* (quoting *Securities and Exchange Com. v. Chenery Corp.*, 318 U.S. 80, 88 (1943)). When the circuit court's *legal rulings* are right for the wrong reasons, reviewing courts will often supply the right reasons sufficient to affirm the circuit court. Discretionary decisions can be another matter. This is particularly so in class action certification cases. *See Ford v. ChartOne, Inc.*, 908 A.2d 72, 85 (D.C. 2006) ("Ordinarily, we may not salvage an unsound discretionary ruling by substituting our own reasons for those of the trial court."). Another way to express the concept is that "[o]ur task is to review the circuit court's exercise of this discretion for abuse—not to exercise that discretion on the circuit court's behalf." *Bodeau v. State*, 248 Md. App. 115, 154 (2020) (cleaned up). Accordingly, we will vacate the judgment of the circuit court in part and remand the case for the circuit court to decide whether to certify Silver's proposed injunctive-relief class.

As we have noted, the parties have identified potentially relevant bases for the circuit court either to grant or to deny certification to an injunctive relief class. Silver and the hospitals are free to raise them again on remand.[15]

**THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED IN PART AND VACATED**

---

[15] This opinion was originally filed as an unreported opinion on December 7, 2020. By an order dated December 18, 2020, the panel withdrew the unreported opinion and ordered the filing of this opinion in its place.

IN PART. THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EVENLY BETWEEN THE APPELLANT AND THE APPELLEES.